**AFFIRM in Part, REVERSE in Part, and REMAND; Opinion Filed August 30, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00908-CV

**R. ROYALE, Appellant**
**V.**
**KNIGHTVEST MANAGEMENT, LLC, FOXMOOR APARTMENTS, LLC, ABERDEEN OWNER, LLC, OWNERS K. C. KRONBACH AND DAVID MOORE, Appellees**

**On Appeal from the 14th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-03986**

## MEMORANDUM OPINION
Before Justices Myers, Molberg, and Carlyle
Opinion by Justice Molberg

R. Royale, appearing pro se, challenges the trial court's summary judgment in favor of

Knightvest Management, LLC (Knightvest), Foxmoor Apartments, LLC, Aberdeen Owner, LLC,

K.C. Kronbach, and David Moore (collectively, Appellees) on his defamation claim, and the trial

court's dismissal with prejudice of his claims for intentional infliction of emotional distress (IIED),

premises liability, and violations of the Texas Fair Housing Act. Royale appears to raise four

issues on appeal, contending the trial court erred by (1) dismissing his claims for premises liability,

IIED, and Texas Fair Housing Act violations without "carefully giving all Appellant's pleadings

and evidence the proper due diligent [sic]," (2) "ignoring Appellant's two statutes [sic] for fraud

claims," (3) granting summary judgment in favor of Appellees on his defamation claim when there

was a genuine issue of material fact, and (4) granting Appellees' motion for summary judgment without allowing sufficient time for discovery.

We affirm the trial court's judgment in part and reverse in part. We affirm the trial court's judgment with respect to Royale's claims for defamation and premises liability. We reverse the trial court's judgment with respect to Royale's claims for IIED and violation of the Texas Fair Housing Act, and remand those claims to the trial court for proceedings consistent with this opinion.

## BACKGROUND

### Factual Background

We draw the following relevant facts from the allegations in Royale's petition.

Royale's claims arise out of a confrontation he had with Taylor Smith, an off-duty police officer dressed in plainclothes serving as a "courtesy officer" providing security at the Aberdeen@Bellmar apartment complex (Aberdeen) where Royale and Smith resided. Royale alleges that Smith stopped him in the Aberdeen parking lot "without probable cause" because he is "a black male with dread locks." The petition alleges that Smith's statements that he stopped Royale after observing him pulling on the door handle of someone else's apartment and staring at a child are "false" and "ma[d]e-up." According to Royale, Smith "viciously harassed," "verbally threatened," and tried to "violently [provoke him] into a physical confrontation." After Smith identified himself as a police officer, Royale "fled to the leasing office for his safety," believing his " life [was] in peril."

Smith followed Royale to the leasing office, where Royale "loudly complain[ed]" about the "harassment in the parking lot" to the apartment complex manager, Vicki Hibdon. During the "heated confrontation," Hibdon and Smith allegedly "intimidated" Royale and "carried on threats and badgering of [him]." These included "threats of handcuffing, arresting and kicking [Royale]

off the property." Royale claims he was a victim of "illegal racial profiling" and that Smith's reasons for stopping him were a "pretext[]" for Smith's real reason, namely Royale's "appearance of being a black male." Royale claims Hibdon and Smith "abused their powers and demonstrated misconduct by attempting to put massive fear in [Royale] because he was, 'Black,' or a certain minority group that Knightvest did not want living on their properties." The petition does not allege that Royale was physically injured during his confrontations with Smith and Hibdon, or that Smith or Hibdon made physical contact with Royale.

Royale's petition asserts claims for premises liability based upon a premises defect, IIED, defamation, and violations of the Texas Fair Housing Act. The petition states, "Knightvest Management's landlords had put a tenant, [Royale], life in peril with a police officer who was out of uniform." As a result, the "apartment owners breached its [sic] non-delegable duty to keep the premises safe for its tenants, a '*premises defect*'." Royale alleges he sustained:

> . . . non-economic damages due to Defendant illegally hiring an off-duty police officer secretly to pose as their courtesy officer and targeting certain people who are on the property, which created an "*Intentional Infliction of Emotional Distress*."[1]

The petition alleges Royale was "defamed and emotionally harmed" as a result of Smith's deposition testimony—in a lawsuit filed by Royale in federal court arising out of these events— that he saw Royale "staring at a female child [and] pulling a door handle that wasn't assigned to him." The petition further states that Hibdon "maliciously" posted a lease termination notice on his door, "terminated [his] lease contract[,] and denied him a lease renewal because of his race," in violation of "the Texas Fair Housing Practices sec. 301.021"; Hibdon and Smith "violated . . . the Fair Housing Act sec. 301.171, for the intimidation of a tenant, R. Royale"; and Appellees did

---

[1] Royale claims he did not know the apartment complex had a plainclothes, off-duty police officer serving as a courtesy officer for the apartment complex.

not provide "the correct landlord's agent for service of process to avoid lawsuits by tenants," in violation of "sec. 92.003 of the Texas Fair Housing Act."[2]

Claiming he was "fearful of being put into another dangerous situation that might result in him being shot or killed next time by Defendant's onsite officers" and he was "bullied off the [apartment] property," Royale and his wife abandoned their apartment at the Aberdeen and "deplete[d] their savings and incurred notes" to purchase a condominium, for which Royale now seeks reimbursement. Royale requests damages in the amount of $1,072,084.74, consisting of (1) economic damages for all costs related to his purchase of the condominium and for unidentified medical bills, (2) non-economic damages for IIED resulting from "Defendant illegally hiring an off-duty police officer secretly to pose as their courtesy officer" as well as "emotional harm" resulting from Smith's deposition testimony that he observed Royale staring at a female child and "pulling a door handle" of someone else's apartment, and (3) punitive damages. With respect to economic damages, the petition states:

> Economic loss: [Royale's] Savings of $19,536.57 for **cash at closing** for Condominium, incurred a **bank loan** $67,500 (rate 4%); **Appraisal fee** $520 plus the **condo questionnaire** $235 + **option fee** $100 + **earnest money** $2,000 + **inspection** $250 equal $3,105. Total payment amount for **30 year mortgage** is $119,371.18 which was signed and obligated by [Royale] on the loan.

(Emphasis added.) Royale requests $41,671.19 for unspecified "medical bills" and punitive damages "not exceed[ing] more than two times the amount of economic damages plus the amount equal to noneconomic damages not to exceed $750,000 or $200,000, whichever is greater." The petition then shows the math for Royale's total damages claim:

> **Economic Loss:** (*above loan*) $119, 371.18 + Medical Bills: $41,671.19 = $161,042.37. [Royale] ask for judgment against Defendant for Economic

---

[2] Royale appeared to abandon his claim that Appellees violated "sec. 92.003 of the Texas Fair Housing Act" at the hearing on Appellees' motion to dismiss when the trial court informed Royale that no such statutory provision existed, stating, "The Texas Fair Housing Act is Title 15 and it starts at Chapter 301. There is no Chapter 92."

Damage of $161,042.37 x 2 = $322,084.74 + maximum Non-Economic Damages: $750,000 = Punitive Damages: $1,072.084.74.

## Procedural Background

Prior to filing this lawsuit, Royale filed suit in federal court alleging violations of his civil rights and asserting a state-law claim for IIED. The United States District Court for the Northern District of Texas dismissed Royale's federal claims with prejudice and declined to exercise supplemental jurisdiction over Royale's IIED claim, dismissing it without prejudice.

On March 27, 2018, Royale filed the underlying suit, alleging claims for IIED, defamation, premises liability, and violations of the Texas Fair Housing Act.[3] On April 19, 2018, Appellees moved to dismiss Royale's claims pursuant to Texas Rule of Civil Procedure 91a, arguing:

- Royale's claim for IIED has no basis in law or fact.

- Royale's petition does not allege facts showing any "extreme and outrageous" conduct by Smith or by Hibdon. Nor does the petition allege facts showing that Royale suffered "severe emotional distress."

- Royale's claims under the Texas Fair Housing Act fail because the allegations in his petition demonstrate Knightvest did not refuse to rent an apartment to Royale or otherwise discriminate against Royale with respect to rental terms. Rather, the allegations show that Royale lived at his Aberdeen apartment for two years prior to the alleged confrontation.

- Royale's defamation claim based on Smith's statements is barred under the judicial or quasi-judicial communications privilege.

- Royale's premises liability claim fails because he did not allege a physical injury.

After a hearing, the trial court granted Appellees' rule 91a motion in part, dismissing with prejudice Royale's claims for premises liability, IIED, and violations of the Texas Fair Housing Act. The trial court allowed Royale's defamation claim to go forward.

---

[3] On appeal, Royale contends the trial court "disregarded [his] fraud claims," and he implies the petition alleges a claim for conspiracy, asserting he "has proven all his allegations of conspiracy when opposing Appellee's Motion to Dismiss." Royale's "complaint," however, does not assert claims for fraud or conspiracy.

Appellees filed a traditional and no-evidence motion for summary judgment on Royale's remaining claim for defamation on July 17, 2018, arguing (1) Royale's defamation claim was barred by res judicata, and (2) Smith's testimony that he observed Royale staring at a female child was made in the course of a judicial proceeding and thus was protected by the judicial communications or quasi-judicial communications privilege. Alternatively, Appellees argued Royale failed to present any evidence that Smith's statement qualified as "defamatory" or that Smith "published" his statement to Hibdon because Smith did not tell Hibdon he observed Royale staring at a female child. Moreover, Appellees argued that staring at a female child does not implicate sexual misconduct and thus is not defamatory per se. By order dated August 9, 2018, the trial court granted Appellees' traditional and no-evidence motion for summary judgment without stating the grounds therefore.

## ANALYSIS

### Pro Se Parties

Royale appeared pro se before the trial court and also is representing himself in this Court. "We construe liberally pro se pleadings and briefs; however, we hold pro se litigants to the same standards as licensed attorneys and require them to comply with applicable laws and rules of procedure." *Washington v. Bank of N.Y.*, 362 S.W.3d 853, 854 (Tex. App.—Dallas 2008, no pet.). "To do otherwise would give a pro se litigant an unfair advantage over a litigant who is represented by counsel." *In re N.E.B.*, 251 S.W.3d 211, 212 (Tex. App.—Dallas 2008, no pet.).

### Rule 91a Motion to Dismiss

*Standard of Review and Applicable Law*

Texas Rule of Civil Procedure 91a authorizes a defendant to move for dismissal of a claim that has no basis in law or in fact. TEX. R. CIV. P. 91a.1.; *see also City of Dallas v. Sanchez*, 494 S.W.3d 722, 724–25 (Tex. 2016). A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn therefrom, do not entitle the plaintiff to the

relief sought. TEX. R. CIV. P. 91a.1. A cause of action has no basis in fact if no reasonable person could believe the facts pleaded. *Id.*

A rule 91a motion to dismiss must identify each claim subject of the motion and specify the reasons each claim has no basis in law or in fact. TEX. R. CIV. P. 91a.2. The trial court may not consider any evidence in ruling on a rule 91a motion. TEX. R. CIV. P. 91a.6. Except as required to determine an award of attorney's fees under rule 91a.7, the trial court may consider only the live pleading and any appropriate attachments thereto. *Id.* ("the court may not consider evidence in ruling on the motion and must decide the motion based solely on the pleading of the cause of action, together with any pleading exhibits permitted by Rule 59 [of the Texas Rules of Civil Procedure]"); *AC Interests, L.P. v. Tex. Comm'n on Envt'l Quality*, 543 S.W.3d 703, 706 (Tex. 2018).

We review de novo a trial court's order granting a motion to dismiss pursuant to rule 91a. *Sanchez*, 494 S.W.3d at 724. In conducting our review, we construe the pleadings liberally in favor of the plaintiff. *In re RNDC Tex., LLC*, No. 05-18-00555-CV, 2018 WL 2773262, at *1 (Tex. App.—Dallas June 11, 2018, orig. proceeding) (mem. op.). Under the fair-notice pleading standard we apply to determine whether the petition's allegations are sufficient to allege a cause of action, we assess whether the defendant can ascertain from the pleading the nature of the controversy, its basic issues, and the type of evidence that may be relevant. *Thomas v. 462 Thomas Family Props., L.P.*, 559 S.W.3d 634, 639–40 (Tex. App.—Dallas 2018, pet. denied); *see also Darnell v. Rogers*, No. 08-17-00067-CV, 2019 WL 2897489, at *3 (Tex. App.—El Paso July 5, 2019, no pet. h.). "Rule 91a provides a harsh remedy that should be strictly construed." *In re RNDC*, 2018 WL 2773262, at *1. The rule is not a substitute for special exception practice under rule 91 or summary judgment practice under rule 166a, both of which come with protective features. If a petition provides sufficient facts to give fair notice of the claim, then a motion

seeking dismissal based on lack of a basis in fact should be denied. *Id.,* at *1 (citing *In re Odebrecht Constr., Inc.*, 548 S.W.3d 739, 746 (Tex. App.—Corpus Christi-Edinburg 2018, orig. proceeding) (mem. op. on rehearing)). Similarly, if nothing in the pleading itself triggers a clear legal bar to the claim, then there is a basis in law and the motion should be denied. *In re RNDC*, 2018 WL 2773262, at *1.

*Trial Court's Alleged Failure to Consider Royale's Pleadings and Evidence:*
*Premises Liability, IIED, Texas Fair Housing Action Violations*

In what we construe as his first issue, Royale contends the trial court abused its discretion by dismissing with prejudice his claims for premises liability, IIED, and Texas Fair Housing Act violations. Royale argues the trial court erred because it "did not fully consider all the facts pertaining to Appellant's pleadings and evidence that supported Appellant's factual allegations in this case found in his petition and responses."

In response, Appellees argue (1) Royale's petition fails to establish the "extreme and outrageous" conduct and the "severe emotional distress" necessary to sustain a claim for IIED; (2) Royale's claims for violations of the Texas Fair Housing Act fail because his petition fails to allege facts showing that Appellees refused to lease an apartment to Royale on the basis of race, but rather, it establishes that Appellees leased an apartment to Royale for at least two years before his confrontation with Smith and Hibdon; and (3) Royale's premises liability claim fails because his petition did not allege a physical injury.

At the outset, we address Royale's contention that the trial court "erred and abused its discretion when not carefully giving all Appellant's . . . evidence the proper due diligent [sic] [.]" Rule 91a.6. expressly provides the "court may not consider evidence" in deciding a rule 91a motion. Whether the dismissal standard under rule 91a is satisfied depends "solely on the pleading of the cause of action." TEX. R. CIV. P. 91a.6. Therefore, the trial court was not permitted to consider evidence, other than permissible rule 59 exhibits, of which there are none.

*Premises Liability*

A defendant is liable on a premises liability claim only to the extent it owes the plaintiff a legal duty. *See Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 217 (Tex. 2008). The duty owed by a landlord to its tenant is the duty owned to an invitee. *Parker v. Highland Park, Inc.*, 565 S.W.2d 512 (Tex. 1978). To prevail on his premises liability claim, Royale must prove: (1) the apartment complex had actual or constructive knowledge of an unreasonably dangerous condition on the premises; (2) the condition posed an unreasonable risk of harm; (3) the apartment complex did not exercise reasonable care to reduce or eliminate the risk; and (4) the apartment complex's failure to use reasonable care proximately caused Royale's injuries. *Motel 6 G.P. v. Lopez*, 929 S.W.2d 1, 3 (Tex. 1996); *Keetch v. Kroger Co.*, 845 S.W.2s 262, 264 (Tex. 1992).

Royale's petition clearly pleads that his premises liability claim relates to a "premises defect," yet he fails to identify the defect, unless, of course, he means that Smith is the "defect." Under the most liberal construction of his pleading, Royale fails to allege that he sustained an injury from a premises defect. There is no cognizable cause of action for premises liability under his alleged facts. Considering, as we must, only Royale's pleading, *see* TEX. R. CIV. P. 91a.6., his premises liability claim fails on the first element: he fails to allege a dangerous condition, much less a condition that is "unreasonably" dangerous. Royale apparently founds his premises liability claim on the assertion that Appellees breached their duty to disclose "concealed dangers and a duty of care as to common areas" by "fail[ing] to provide any notice to its tenants of having an off-duty police officer working as a courtesy officer for its property." Royale's petition alleges:

> 8. The apartment owners breached its [sic] non-delegable duty to keep the premises safe for its tenants, a *"premises defect",* in Plaintiff's lease agreement. The event caused non-economic damages due to Defendant illegally hiring an off-duty police officer secretly to pose as their courtesy officer and targeting certain people who are on the property, which created an *"Intentional Infliction of Emotional Distress*["] . . . .

–9–

A person, however, is not a "condition" or a "defect" in the circumstances alleged in Royale's petition. Therefore, and again, Smith's mere presence on the property as a courtesy officer cannot be the subject of a premises liability claim in the circumstances alleged because Texas law does not recognize such a cause of action under these facts or any that can reasonably be inferred therefrom. Put another way, Royale's "allegations, taken as true, together with the inferences reasonably drawn from them, do not entitle [Royale] to the relief sought." Thus, this claim lacks a basis in law. TEX. R. CIV. P. 91a.1.

Accordingly, we conclude the trial court did not err in dismissing Royale's premises liability claim under rule 91a.

*Intentional Infliction of Emotional Distress*

To recover damages for intentional infliction of emotional distress, a plaintiff must establish that (1) the defendant acted intentionally or recklessly, (2) the defendant's conduct was extreme and outrageous, (3) the defendant's actions caused the plaintiff emotional distress, and (4) the resulting emotional distress was severe. *Hoffmann-LaRoche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004). *See also Hersh v. Tatum*, 526 S.W.3d 462, 468 (Tex. 2017). In addition, there generally must be no other cause of action available to redress the tortious conduct. *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005).

As a threshold matter, we must determine whether the complained-of conduct may reasonably be regarded as so "extreme and outrageous" as to support liability. *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 612, 616 (Tex. 1999). To establish that the defendant's alleged conduct was extreme and outrageous, the plaintiff must ultimately prove at trial that the conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hoffman-LaRoche, Inc.*, 144 S.W.3d at 445 (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex.

1993)).  Tortious, insensitive, malicious, rude, or otherwise wrongful conduct, without more, is insufficient.  *Bradford v. Vento*, 48 S.W.3d 749, 758 (Tex. 2001); *Bruce*, 998 S.W.2d at 612, 616. Mere insults or indignities do not rise to the necessary level of extreme and outrageous conduct. *Tex. Farm Bureau Mut. Ins. Cos. v. Sears*, 84 S.W.3d 604, 610 (Tex. 2002).  As a judicially created "gap-filler" tort, a claim for IIED is limited to "those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress."  *Hoffman-LaRoche, Inc.*, 144 S.W.3d at 447 (quoting *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998)).

Additionally, as a result of the defendant's extreme and outrageous conduct, the plaintiff must have suffered severe emotional distress.  Severe emotional distress is distress that is so severe that no reasonable person could be expected to endure it.  *Bruce*, 998 S.W.2d at 616, 618.

In resolving the issue before us, we are mindful that we are confined to reviewing Royale's petition, and nothing more, in determining whether this claim should be dismissed under rule 91a. *See* TEX. R. CIV. P. 91a.6.  Royale has alleged a recognized cause of action under Texas law, and we cannot say his allegations, "taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought."  TEX. R. CIV. P. 91a.1.  Thus, his claim has a basis in law.  *See In re RNDC*, 2018 WL 2773262, at *1 ("if nothing in the pleading itself triggers a clear legal bar to the claim, then there is a basis in law").  Further, in reviewing the allegations in Royale's petition, we cannot say that "no reasonable person could believe the facts pleaded" by Royale. *See* TEX. R. CIV. P. 91a.1.  Thus, his IIED claim has a basis in fact under the rule.  Under Rule 91a, this ends the inquiry, as we are not at liberty to assess the ultimate evidentiary vitality of Royale's claim.  That is the role of summary judgment proceedings or trial.  Nor are we licensed to substitute rule 91a for rule 91, which permits amendment of pleadings to cure pleading deficiencies that are curable.

–11–

Accordingly, we conclude the trial court erred in dismissing Royale's IIED claim under rule 91a, and we resolve this issue in Royale's favor.

*Texas Fair Housing Act*

Royale's petition alleges Hibdon and Smith violated sections 301.171 and 301.021 of the Texas Fair Housing Act. *See* TEX. PROP. CODE ANN. §§ 301.171, 301.021. The Texas Fair Housing Act prohibits discriminatory housing practices. TEX. PROP. CODE ANN. §§ 301.001–.171. Section 301.171 states, in pertinent part:

> (a) A person commits an offense if the person . . . by force or threat of force intentionally intimidates or interferes with a person:

> (1) Because of the person's race . . . and because the person is or has been renting . . . any dwelling . . . .

Section 301.021 states, in pertinent part:

> (a) A person may not refuse to sell or rent . . . or deny a dwelling to another because of race . . .

> (b) A person may not discriminate against another in the terms, conditions, or privileges of sale or rental of a dwelling or in providing services or facilities in connection with a sale or rental of a dwelling because of race . . .

Royale's petition alleges Hibdon and Smith violated section 301.171 "for the intimidation of [Royale]," and Hibdon violated section 301.021 by "terminat[ing] Royale's lease contract and den[ying] him a lease renewal because of his race." Appellees do not dispute they taped a notice of non-renewal of Royale's lease to his door. Royale's petition alleges, "Knightvest's regional manager . . . told another tenant about removing types of people, 'Blacks,' from Knightvest's properties." Royale describes himself as a "black male with dread locks."

We conclude that Royale's allegations state a recognized cause of action and those allegations, if taken as true, together with inferences reasonably drawn from them, entitle him to relief under the Texas Fair Housing Act. Furthermore, we conclude that a reasonable person could believe the facts pleaded. *See* TEX. R. CIV. P. 91a.1. Thus, given the limited nature of our inquiry

–12–

under rule 91a, Royale's cause of action enjoys a basis in law and fact.  Accordingly, we conclude the trial court erred in dismissing Royale's claims for violation of the Texas Fair Housing Act under rule 91a.

We resolve this issue in Royale's favor.

**Fraud**

In what we construe as Royale's second issue on appeal, Royale argues the trial court erred by failing to address his claim for fraud:

> The trial court had disregarded Appellant's fraud claims, as it was not fully addressed by the court as Appellant had proven that Knightvest Management, LLC, purposely falsified documents and used misrepresentation in violating the agreement in Appellant's TAA Lease Contract in year 2015–2016.

Appellees respond that Royale's live petition did not assert a claim for fraud.

*The Specific Language of the Petition Does Not State a Claim for Fraud*

Pleadings must give fair and adequate notice of the claims asserted.  *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 354–55 (Tex. 1995).  As a reviewing court, in the absence of special exceptions, we liberally construe the petition to include any claims that reasonably may be inferred from the specific language in the petition.  *Id.*; *Bloom v. Swango*, No. 05-14-01237-CV, 2015 WL 5786824, at *3 (Tex. App.—Dallas Oct. 5, 2015, pet. denied) (mem. op.).  We may not, however, use a liberal construction to read into the petition a claim that it does not contain.  *Bloom*, 2015 WL 5786824, at *3.  The test for determining whether a petition provides fair notice is whether the opposing party can ascertain from the pleading the nature and basic issues presented by the controversy and what evidence might be relevant.  *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224–25 (Tex. 2017).  The fair notice standard measures "whether the pleadings have provided the opposing party sufficient information to enable that party to prepare a defense or a response."  *Id.*

Because the record on appeal does not reflect that Appellees made special exceptions as to any claim for fraud or any alleged failure to plead claims with particularity, we review Royale's petition liberally in his favor to determine if he pleaded a claim for fraud. *See Boyles v. Kerr*, 855 S.W.2d 593, 600–01 (Tex. 1993). While we must find the inclusion of claims that reasonably may be inferred from the petition's language, the petition still must provide reasonable notice of the claims asserted. *Id.* (concluding that claim for grossly negligent infliction of emotional distress could not reasonably be inferred from allegations of negligent infliction of emotional distress).

Even under a liberal construction, Royale's petition cannot be said to include a cause of action for fraud. The petition contains a section titled, "BACKGROUND" (background section), which identifies the parties and describes the alleged events subject of Royale's claims, and a section titled, "SUMMARY OF ARGUMENT" (argument section), which describes Appellees' alleged acts of wrongdoing, purports to specify statutes Appellees violated, describes the alleged harm to Royale, and identifies Royale's causes of action against Appellees.

Under a liberal reading of the petition, it reasonably could be inferred that the specific language of the argument section asserts causes of action for IIED, violations of chapter 301 of the Texas Fair Housing Act, defamation, and premises defect. The argument section specifically alleges:

- "Vicki Hibdon and Taylor Smith violated Texas 'Title' 8, for the Fair Housing Act sec. 301.171[.]"

- "[Hibdon] only terminated Plaintiff's lease contract and denied him a lease renewal because of his race . . . . Plaintiff charge violation under the Texas' Property Code TITLE 15, of the Texas Fair Housing Practices sec. 301.021[.]"[4]

- "The apartment owners breached its non-delegable duty to keep the premises safe for its tenants, a '*premises defect*' . . . .The event cause non-

---

[4] Royale also alleged Appellees violated "sec. 92.03 of the Texas Fair Housing Act." At the hearing on Appellees' motion to dismiss, when the trial court stated Texas Fair Housing Act does not include a chapter 92, Royale agreed he "mean[t] Section 301 of the act."

–14–

economic damages due to Defendant illegally hiring an off-duty police officer secretly to pose as their courtesy officer and targeting certain people who are on the property, which created an '*Intentional Infliction of Emotional Distress* (IIED)[.]"

- "[Smith's] accusations defamed and emotionally harmed Plaintiff[.]"

The argument section does not use any specific language referring to "fraud."[5]

In contrast, the background section of the petition does not assert any claims, but, rather, only describes the alleged confrontation. Although the last line of the background section states, "The owners of the property had breach [sic] Plaintiff's lease contract under 31.1(c) and there was a misrepresentation to fraud a tenant," the petition does not provide any fact allegations regarding the content of section 31.1(c), or any fact allegations explaining how Appellees allegedly breached section 31.1(c) of the lease and how any such breach constituted fraud.[6]

Liberally construing the specific language of the petition, we conclude it cannot reasonably be inferred that Royale's petition asserts a cause of action for fraud.

*Trial Court Hearing Transcripts Reflect Royale Did Not Assert a Claim for Fraud*

Transcripts of the hearings on Appellees' motion to dismiss and Appellees' motion for traditional and no-evidence summary judgment corroborate that Royale did not assert a claim for fraud.

At the commencement of the May 14, 2018 hearing on Appellees' rule 91a motion to dismiss, Appellees informed the trial court—with no dispute from Royale—that Royale's live pleading asserted claims for IIED, violations of the Texas Fair Housing Act, defamation, and premises liability. At the end of the hearing, the trial court granted Appellees' motion to dismiss "with regard to the claims of premises liability, intentional infliction of emotional distress and

---

[5] The argument section of the petition references sections 16.004(a)(3) and (a)(4) of the Texas Civil Practice and Remedies Code. Those sections, however, only provide the statute of limitations period for a suit on a debt or fraud.

[6] The petition does not assert a cause of action for breach of contract.

violation of the Texas Fair Housing Act." The trial court informed Royale, "You've got a claim that you may continue to pursue" because it was "not dismissing [Royale's] claim with regard to defamation." Advising Royale he "may proceed with that claim," the trial court repeated, "you still have a viable claim[.]" At no time did Royale challenge the trial court's statements and Appellees' statements that the only claims asserted in the petition were for IIED, violations of the Texas Fair Housing Act, defamation, and premises liability. Moreover, the trial court apprised Royale, "you have the right to file an amended petition," provided the amended petition did not include the causes of action it had dismissed. Royale did not file an amended petition to assert a claim for fraud.

Likewise, Royale did not dispute statements by the trial court and by Appellees' counsel at the August 9, 2018 hearing on Appellees' traditional and no-evidence motion for summary judgment on Royale's defamation claim that the petition only asserted claims for premises liability, IIED, violations of the Texas Fair Housing Act, and defamation. At the beginning of the hearing, Appellees told the trial court, "There's only one claim remaining in this lawsuit and that is for defamation." Royale did not challenge or dispute Appellees' statement. After granting Appellees' summary judgment motion on Royale's defamation claim, the trial court stated, "I believe the only claim that was left in this case was the motion that I just ruled on." Royale responded, "Okay." The following exchange then occurred:

> The Court: So that is a final–You'll make that in terms of a final and an appealable order.
>
> [Appellees' counsel]: Yes, Your Honor.
>
> * * * *
>
> The Court: . . . . I have just dismissed your claim.
>
> Mr. Royale: For defamation?
>
> The Court: Yes, sir.

The Court:  Anything further?

[Appellees' counsel]:  Not from us Your Honor.

The Court:  Anything further from you, sir?

Mr. Royale:  No sir.

At no time did Royale challenge or dispute statements by the trial court and by Appellees' counsel that the defamation claim subject of Appellees' motion for summary judgment was Royale's only remaining claim and that no claims remained after his defamation claim was dismissed.  Nor did Royale mention or raise any question or issue regarding a claim for fraud.

Having determined that Royale's petition does not assert a claim for fraud, we therefore conclude the trial court properly did not address any claim for fraud.  We resolve Royale's second issue against him.

**Traditional and No-Evidence Motion for Summary Judgment**

*Standard of Review and Applicable Law*

We review a trial court's grant of summary judgment de novo.  *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017).  To prevail on a traditional motion for summary judgment, the moving party must prove there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985).  We consider the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not.  *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

We review a no-evidence motion for summary judgment under the same legal sufficiency standard used to review a directed verdict.  *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003).  Under this standard, we ascertain whether the nonmovant produced more than a scintilla of probative evidence establishing the existence of a genuine issue of material fact on the

challenged element. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *King Ranch, Inc.*, 118 S.W.3d at 751. If, however, the evidence is "so weak as to do no more than create a mere surmise or suspicion" of fact, there is less than a scintilla and the evidence does not create an issue of material fact. *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014) (quoting *Ridgway*, 135 S.W.3d at 601).

When analyzing traditional and no-evidence summary judgments, we consider the evidence in the light most favorable to the nonmovant. *See Nixon,* 690 S.W.2d at 548–49; *see also Mann Frankfort Stein & Lipp Advisors, Inc.*, 289 S.W.3d at 848.

When a party moves for summary judgment on multiple grounds and the trial court's order granting summary judgment does not specify on which it was based, the appellant must negate all possible grounds upon which the order could have been granted. *See Jarvis v. Rocanville Corp.,* 298 S.W.3d 305, 313 (Tex. App.—Dallas 2009, pet. denied); *see also Gonzales v. Thorndale Coop. Gin & Grain Co.*, No. 14-18-00267-CV, 2019 WL 2063120, at *3 (Tex. App.—Houston [14th Dist.] May 9, 2019, no pet.) ("Longstanding case law only permits the appellate court to look to the trial court's formal summary-judgment order to determine the trial court's grounds, if any for its ruling."); *Strather v. Dolgencorp of Tex., Inc.*, 96 S.W.3d 420, 423 (Tex. App.—Texarkana 2002, no pet.) ("we must look only to the order granting summary judgment, in which the trial court did not provide the reasons for its ruling"). If an appellant does not challenge each possible ground for summary judgment, we must uphold the summary judgment on the unchallenged grounds. *See id*.; *see also Adams v. First Nat'l Bank of Bells/Savoy,* 154 S.W.3d 859, 875 (Tex. App.—Dallas 2005, no pet.) ("a reviewing court will affirm the summary judgment as to a particular claim if an appellant does not present argument challenging all grounds on which the summary judgment could have been granted").

*Defamation*

In what we construe as his third issue, Royale contends the trial court erred by granting summary judgment in favor of Appellees on his defamation claim when there was a genuine issue of material fact. Royale argues the trial court erred because he "did state at least one genuine issue of material fact in this case." In response, Appellees argue that because Royale's brief on appeal fails to address "at least two of the three specific grounds Appellees argued in their motion for summary judgment," this Court must affirm the trial court's summary judgment on Royale's defamation claim. Alternatively, Appellees repeat the arguments in their motion for summary judgment that (1) Royale's defamation claim was barred by res judicata; (2) the statement underlying Royale's defamation claim is not actionable because it was made in either a judicial proceeding or a quasi-judicial proceeding; and (3) Royale failed to present any evidence that the statement in question qualified as "defamatory" or that the speaker "published" his statement.

The trial court's order granting Appellees' traditional and no-evidence motion for summary judgment order does not state the basis of the trial court's ruling. Therefore, on appeal, Royale was required to negate all possible grounds upon which the trial court could have granted summary judgment. *See Jarvis*, 298 S.W.3d at 313. If he failed to do so, we must uphold the summary judgment on the unchallenged grounds. *See id.*; *see also Adams*, 154 S.W.3d at 875.

With respect to his defamation claim, Royale's brief on appeal appears to argue:

- Smith made two defamatory statements: (1) "before any depositions were taken or statements were submitted to the Dallas Police Dept.," Smith told his girlfriend and "Sgt. Silvia" that he saw Royale pull on a door handle that was not assigned to him; and (2) on his "statement," Smith stated that he observed Royale "staring at a female child."

- Smith "fabricated" his statements "to avoid being caught using a pretexual [sic] stop to racially profile Appellant"; and he "lied in his internal statement."

- Hibdon "who herself is being considered also culpable" may not be "creditable and trustworthy."

–19–

- The only defamatory statement the trial court considered was Smith's statement that he observed Royale "staring at a female child"; and Royale "disagreed with that being the only defamatory statement."

- Royale told the trial court "there was never a door he was at or child." Therefore, the trial court's decision to grant summary judgment dismissing Royale's defamation claim was an abuse of discretion because it made "an evidentiary ruling" that "lies outside the zone of reasonable disagreement."

- Royale "provided evidentiary facts in his pleadings and responses to Appellees' No-Evidence Motion for Summary Judgment hearing" and therefore raised a genuine issue of material fact.

Royale's opening brief on appeal does not address the arguments in Appellees' traditional and no-evidence motion for summary judgment that Royale's defamation claim was barred by res judicata, or that the statement underlying Royale's defamation claim was not actionable because it was made in either a judicial proceeding or a quasi-judicial proceeding. His opening brief does not even acknowledge that Appellees sought summary judgment on those bases.

Because Royale did not make an argument in his opening brief on appeal challenging every ground on which the summary judgment could be based, we are required to affirm the summary judgment, regardless of the merits of the unchallenged ground. *See Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 120–21 (Tex. 1970) (affirming summary judgment based on unchallenged ground of affirmative defense of limitations but expressing "no opinion as to whether a grant of summary judgment would be proper or erroneous" on that ground); *Lowe v. Townview Watersong, L.L.C.*, 155 S.W.3d 445, 447 (Tex. App.—Dallas 2004, no pet.) ("Because summary judgment may have been granted on the unchallenged no-evidence grounds, we must affirm the trial court's summary judgment"). Moreover, the brief discussion Royale's reply brief, addressing—for the first time—the res judicata and judicial and quasi-judicial grounds for summary judgment is insufficient to raise the issue. *Stovall & Assocs. v. Hibbs Fin. Ctr., Ltd.*, 409 S.W.3d 790, 803 (Tex. App.—Dallas 2013, no pet.) (that appellant "could have but did not make such an argument in its opening brief does not allow it to do so for the first time in its reply brief"); *Miner Dederick*

*Constr., LLP v. Gulf Chem. & Metallurgical Corp.*, 403 S.W.3d 451, 463 n.3 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (op. on reh'g) ("the rules of appellate procedure do not allow an appellant to include in a reply brief a new issue in response to some matter pointed out in the appellee's brief but not raised in the appellant's opening brief").

Because Royale's opening brief on appeal fails to address every ground upon which the trial court could have granted summary judgment dismissing his defamation claim, we must affirm. *See Jarvis*, 298 S.W.3d at 313; *see also Adams,* 154 S.W.3d at 875. We resolve Royale's third issue against him.

### Discovery

In what we construe as his fourth issue, Royale contends the trial court erred in granting Appellees' traditional and no-evidence motion for summary judgment motion before adequate time for discovery had been allowed.[7]

At the end of the hearing on Appellees' motion for summary judgment Royale informed the trial court, "I would make a motion . . . [under] Texas Rule of Civil Procedure 215(1)(b)3(d) [sic] to compel discovery." The following exchange then occurred between Royal and the trial court:

> Mr. Royale: . . . They haven't given me anything for the new Defendants. You know, Knightvest, they haven't given me my request for 33, 34, 36 and 37, 38 requesting financial information. In case I prevail in this case if [sic] have no way of knowing —
>
> The Court: I understand. Rule 215 is a rule for discovery sanctions. A motion pursuant to 215 —
>
> Mr. Royale: I didn't —
>
> The Court: Be quiet. A motion pursuant to Rule 215 must be made in writing. You must get a Certificate of Conference. You must set that for a hearing. There is no provision in the Texas Rules of Civil Procedure for you

---

[7] Royale's brief on appeal argues, "there was an inadequate discovery" because the trial court "failed to give [Royale] sufficient time before granting a final judgment."

to make an oral motion seeking that, or an oral motion to have that heard at a time when it has not been set. So your motion is not well taken and it is denied.

When a party contends that he has not had an adequate time for discovery before a summary judgment hearing, he must file either an affidavit explaining the need for further discovery or a verified motion for continuance. TEX. R. CIV. P. 166a(g), 251, 252; *Tenneco Inc. v. Enter. Prods. Co.,* 925 S.W.2d 640, 647 (Tex. 1996) (failure to file affidavits or verified motion for continuance waives objection as to lack of time for adequate discovery); *Blanche v. First Nationwide Mortg. Corp.*, 74 S.W.3d 444, 450–51 (Tex. App.—Dallas 2002, no pet.) (same). Royale did not file a verified motion for continuance or an affidavit explaining the need for further discovery. Accordingly, he has waived any argument that the trial court allowed an inadequate time for discovery or that Appellees' motion for summary judgment was premature. *Tenneco, Inc.*, 925 S.W.2d at 647; *Blanche*, 74 S.W.3d at 450–51. We resolve Royale's fourth issue against him.

## CONCLUSION

We are challenged here by our obligation under case law to liberally construe a pro se litigant's petition and briefing when neither is entirely (or even mostly) comprehensible. Mindful of this requirement, we then must measure whether the claims asserted in the pleading have a basis in law and fact once tested on those grounds under rule 91a. And in doing so, we must confine our review solely to that pleading. Of particular interest here is that Royale's appeal of his defamation claim—which was resolved on a motion for summary judgment—provides a wealth of summary judgment evidence that tells a far different story than Royale's allegations in his petition. However, we may not consider this summary judgment evidence in our rule 91a review of the trial court's dismissals under rule 91a. Arguably, had the claims challenged by rule 91a been challenged by summary judgment instead, no remand would have been necessary and this

–22–

case could have ended now. This case illustrates to counsel that rule 91a is not and should not be used as a precipitate substitute for summary judgment.

We affirm the trial court's judgment in part and reverse in part. We affirm the trial court's judgment with respect to Royale's claims for defamation and premises liability. We reverse the trial court's judgment with respect to Royale's claim for IIED and violation of the Texas Fair Housing Act, and remand those claims to the trial court for proceedings consistent with this opinion.

/Ken Molberg/
KEN MOLBERG
JUSTICE

180908F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

R. ROYALE, Appellant

No. 05-18-00908-CV          V.

KNIGHTVEST MANAGEMENT, LLC,
FOXMOOR APARTMENTS, LLC,
ABERDEEN OWNER, LLC, OWNERS,
K. C. KRONBACH AND DAVID
MOORE, Appellees

On Appeal from the 14th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-18-03986.
Opinion delivered by Justice Molberg.
Justices Myers and Carlyle participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED IN PART** and **REVERSED IN PART**. We **AFFIRM** the trial court's judgment with respect to appellant's claims for defamation and premises liability. We **REVERSE** the trial court's judgment with respect to appellant's claims for violation of the Texas Fair Housing Act and intentional infliction of emotional distress, and **REMAND** those claims to the trial court for proceedings consistent with this opinion.

It is **ORDERED** that appellees KNIGHTVEST MANAGEMENT, LLC, FOXMOOR APARTMENTS, LLC, ABERDEEN OWNER, LLC, OWNERS, K. C. KRONBACH AND DAVID MOORE recover their costs of this appeal from appellant R. ROYALE.

Judgment entered this 30th day of August, 2019.